Yes, would you like it now? Can we do this one and then take a break? Okay. Good morning. Good morning, Your Honor. John Sarando from Syracuse on behalf of the appellant, Mr. Page. This is an appeal from the District Court of Connecticut for conspiracy to distribute narcotics. 97 months the defendant received for distributing the oxycodone with false prescriptions for himself and to sell. I think the only, the one issue I think that overrides in regard to our presentation today concerns what do you do with a drug addict who attempts at rehabilitation but does not succeed probably because he's a drug addict. And I think the district court, with all due respect to the district court, misanalyzed the level of addiction that this individual had to, in failing to depart further in regard to the sentence. Because the defendant was given the opportunity to go into support court. While he was in support court, he got a job and was working. He completed an inpatient program. He completed an outpatient program. He was living in a sober house. He was also expressing a willingness to enter into a methadone maintenance test treatment program. As with many individuals in support court, he relapsed or did not complete it. I don't understand what your argument is there. The district court considered that, did not agree with your view. It was well within the district court's discretion to not give that the same weight that you would have liked to have the district court give. Why is that an appellate issue at all? Because I think it rises to a procedural error in the imposition of sentence. Because I don't think it, under this court's decision in Meyer, it failed to properly consider his efforts at rehabilitation. How can you say that? I'm reading from the sentencing transcript. This is the court. I've had numerous cases where an extraordinary effort at rehabilitation was present, and my conclusion is that this is simply not at all like those cases. It is, in my mind at least, simply inconsistent with an extraordinary effort at rehabilitation to be engaging in further criminal conduct. I think your effort in support court was commendable. I don't hold that against you. I hold it as a positive factor for you, but it simply does not rise to the level of extraordinary. So he addressed it and addressed it at length. Yes, Your Honor, and I think this court's decision in Meyer shows that the court did not go far enough in regard to the consideration of the defendant's drug dependence. Was there anything that tied the defendant's drug dependence or that tied drug dependence to the crime that the defendant committed that brought him back here? That brought him into the federal system in this crime? Yeah, this time that we're talking about. Yes, Your Honor. He was prescribed oxycodone for an accident that he had years before, almost 20 years before, and for those 20 years, he's been abusing that medication. So it's not an overnight thing that we're trying to say, oh, because of, you know, it's a 20-year way of life that we're trying to review and look at. And the question, I think, is, as the court said in Meyer, it's, you know, drug dependence is not a reason to depart, but the awareness of one's circumstances and willingness to act to achieve rehabilitation, thereby benefiting the individual and society itself, is such a reason. And I think when you look at someone who's had a 20-year problem, they're going to fail at times or run into a bumpy situation, but that, I think, demonstrates the level of their addiction. If a person goes into support court and does not waiver, I think any judge would say, was he really an addict when he went in there? Because it's filled with the peaks and valleys, and we submit that that was not properly taken into consideration in this case by the district court, regardless of what he said. What rule would you have us write so that district courts, in your view, don't make this mistake again? The district court should ensure that the efforts at rehabilitation are genuine and they are needed, and that because someone fails once, twice, three times, does not mean that they deserve 97 months in jail. That you should look at the individual themselves, each individual person, because... Isn't a fair reading of this record by someone in our position, or I'll speak for myself, that the sentencing judge here did just what you're asking us to tell him to do. The judge Thompson looked at what was before him and gave it consideration. He just reached a different conclusion, as Judge Rakoff had earlier. I think that the problem we have is that the judge separated his addiction from his criminal behavior. And I think part of what they presented at sentencing is conduct that I think even some of it even predated the federal involvement in this case. That there was no mirrors to see if that was related to his drug dependence or addiction. So I think the record is insufficient to make the determination that the court did, regardless of what the court said. Thank you. Thank you. You've reserved two minutes for rebuttal. Yes, Your Honor, if necessary. Thank you. Thank you, Your Honors. Good morning. My name is Jocelyn Courtney-Cautanez, and I represent the United States on this appeal. The defendant's 97-month sentence here, which was almost 40 months below the guidelines range calculated by the district court, was neither procedurally nor substantively unreasonable. Mr. Page ran a sophisticated drug operation with multi-defendants, created fraudulent prescriptions, and distributed a tremendous volume of oxycodone. After he was arrested, although he made some positive steps, he relapsed, he failed to maintain steady employment. After two years in the program, he failed to graduate from support court. And ultimately, and probably most compellingly from Judge Thompson's perspective, he engaged in further criminal activity months before sentencing in this matter while he was sober, according to the drug testing. So just to briefly respond to the points raised by defense counsel, to the extent defense counsel is still pursuing the idea that Judge Thompson did not understand the standard for extraordinary efforts at rehabilitation, I think the record, and I would particularly cite this panel to Joint Appendix 391 to 392 and 365 to 366, indicates that Judge Thompson did understand that standard. And Meyer and the cases that follow, including Middleton, Bryson, and Herman, all make clear that there must be some sort of extraordinary effort. It's not enough to simply enroll in a drug rehabilitation program. There must be some sort of atypical effort or an effort that takes the defendant out of the heartland of cases contemplated by the Sentencing Commission. That's language from United States v. Middleton. Here, Judge Thompson found that Brian Page's efforts were not atypical. He made clear that he wasn't going to punish the defendant, but just that his efforts at rehabilitation did not rise to the standard laid out by these cases. With regards to defense counsel's argument that Judge Thompson did not properly consider or misanalyze Brian Page's level of addiction, the sentencing transcript reveals that he did properly consider that. The level of Brian Page's addiction was briefed by the parties. Judge Thompson had a conference before sentencing in which Brian Page's efforts of pre-trial compliance with his pre-trial supervised release conditions were discussed. And ultimately, again, the judge found that Brian Page did not exhibit that extraordinary efforts at rehabilitation. And, indeed, the fact that he had engaged in criminal conduct with his son shortly before sentencing was a reason to find that he did not. And then with regards to incremental punishment, we would rest on what we've submitted. But, again, the record demonstrates that the district court judge did consider the theory of incremental punishment. Defense counsel had raised the idea that Brian Page had only previously served four months in prison. And so imposing a guideline sentence or anywhere near 100 months would not be appropriate here because a shorter sentence would have a greater effect at deterring Brian Page's further criminal conduct. And the district court found the comparison between the two, the length of time. Sorry, Your Honor? Based that it wouldn't have that effect based on the comparison between the very short sentence and the longer one being contemplated. Correct. And the district court found, first, that the defendant's criminal history was criminal history one. So he wasn't having that over-effect of his criminal history that's in the Michoud case. And then, again, went back to the fact that the defendant engaged in this criminal conduct shortly before sentencing. And then when evaluating the section 3553A factors, stated that the goals of just punishment, the need to protect the public, the need to specifically deter the defendant, and the gravity of defense conduct at issue here outweighed the theory of incremental punishment presented by defense counsel. So for those reasons, again, just referring the court back to the sentencing transcript, Judge Thompson appropriately understood both bases for departure that were raised by defense counsel. He thoroughly considered the record on the standard at which this court is reviewing that decision. There's just no basis to overturn the sentence, and the sentence should be affirmed. And he did depart. Sorry? He did depart, right? And he did depart as well to a below-guideline sentence. And unless Your Honors have any further questions, we would rest on our papers. Thank you. Thank you again. Briefly, insofar as the incremental punishment, we would submit that from four months to 97 months is more than a necessary, appropriate relationship to have a proper deterrent effect. And we would submit that the court should also look at the sentence in that regard. Thank you very much. Thank you. Thank you both. We'll reserve decision in this case.